IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

SCOTTSDALE INSURANCE COMPANY,

    Plaintiff,

v.                                       CIVIL ACTION NO. 2:22-cv-00036

SOLWIND ENERGY, LLC., et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant Solwind Energy, LLC's Motion to Dismiss [ECF No. 11]; Defendant Geoex, Inc.'s Motion to Dismiss [ECF No. 17]; Plaintiff Scottsdale Insurance Company's Cross-Motion for Summary Judgment [ECF No. 12]; and Defendant Solwind Energy, LLC's Cross-Motion for Summary Judgment [ECF No. 13]. For the reasons that follow, Plaintiff's Cross-Motion for Summary Judgment is **GRANTED,** and Defendant Solwind Energy, LLC's Cross-Motion for Summary Judgment and Defendants' Motions to Dismiss are **DENIED**.

### I. Background

In August 2021, Geoex, Inc. ("Geoex") filed a civil complaint in the Circuit Court of Mingo County, West Virginia against Solwind Energy, LLC ("Solwind"), for its purported trespass onto certain property leased by Geoex. [ECF No. 1-1]. Geoex is "the Lessee of certain active oil and gas leases together with a right of way and pipeline easement" (collectively the "Mont Stepp properties") obtained from several

property owners known as the Mont Stepp heirs. *Id.* ¶ 1. Sometime prior to August 2021, Solwind erected structures and power lines on the Mont Stepp properties, purportedly obstructing Geoex's free and unrestricted access to its leases (the "Mont Stepp incident"). *Id.* ¶ 2. As a result of the Mont Stepp incident, Geoex contends that it has lost the ability to drill two planned oil and gas wells on the property and has been damaged in excess of $2 million per well. *Id.* ¶ 3.

Upon receiving the civil complaint, Solwind asserted a claim for insurance coverage under two Commercial General Liability Policies issued by the plaintiff, Scottsdale Insurance Company ("Scottsdale"). The two policies, effective June 23, 2020 to June 23, 2021 [ECF No. 1-2] and June 23, 2021 to June 23, 2022 [ECF No. 1-3], respectively, contain substantially the same provisions and provide two potential avenues for coverage. Both policies include identical provisions for Coverage A and Coverage B and will be considered together. Coverage A insures against "bodily injury" and "property damage" liability caused by an "occurrence" taking place on the "coverage territory" and "during the policy period." [ECF No. 1-2, at 20]. Coverage B insures against "personal and advertising injury caused by an offense arising out of [the insured's] business" that "was committed in the 'coverage territory' during the policy period." *Id.* at 25.

These provisions form the basis of Scottsdale's declaratory action before this court, brought against Solwind and Geoex on January 19, 2022. [ECF No. 1]. Scottsdale, who is currently defending the underlying action under a reservation of rights, contends that the Mont Stepp incident does not fall under Coverage A or B,

2

and the policies expressly exclude coverage for any claims arising out of that incident. *Id.* Accordingly, Scottsdale seeks a declaration that it has no duty to defend or indemnify Solwind in the underlying lawsuit. *Id.* at 10-11.

Solwind subsequently filed a Motion to Dismiss, asking the district court not to adjudicate the coverage question while the state court case is pending. [ECF No. 11]. Scottsdale filed a response to Solwind's motion along with a Cross-Motion for Summary Judgment ("Scottdale's Cross-Motion"), alleging that jurisdiction is proper and urging this court to determine whether coverage applies to the Mont Stepp incident. [ECF No. 12]. Solwind responded to Scottsdale's Cross-Motion and combined that response with its own Cross-Motion for Summary Judgment ("Solwind's Cross-Motion"). [ECF No. 13]. Geoex then filed a Motion to Dismiss, and like Solwind, asks this court to abstain from ruling on coverage issues while the underlying case remains pending. [ECF No. 17]. After additional briefing, as well as the filing of an Amended Complaint [ECF No. 25], Scottsdale renewed its Cross-Motion [ECF No. 26]. I will first address the jurisdictional issues raised in Defendants' Motions to Dismiss and then turn to the Cross-Motions for Summary Judgment.

## II. Jurisdiction

Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within its jurisdiction, "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a

3

discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).

A declaratory judgment action "is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)). When a related state court proceeding is pending, however, "'considerations of federalism, efficiency, and comity'" should inform the district court's decision whether to exercise jurisdiction over a declaratory judgment action. *Poston*, 88 F.3d at 257 (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994)). As the Supreme Court stated in *Wilton*,

> where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in "gratuitous interference". . . if it permitted the federal declaratory action to proceed.

515 U.S. at 283 (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)).

Defendants Solwind and Geoex urge this court to dismiss this action for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing that the issues raised by the plaintiff would be more appropriately litigated in the Circuit Court of Mingo County, where the underlying tort action is pending. [ECF Nos. 11, 17]. Scottdale urges the court to decide the coverage issues or stay this proceeding pending resolution of the state action. [ECF No. 12].

Jurisdiction is proper under 28 U.S.C. § 1332 because the plaintiff and the defendants are diverse and the amount in controversy exceeds $75,000. [ECF No. 1, ¶¶ 1–3, 10]. Because jurisdiction is proper, the relevant question I must decide is whether the court should exercise its discretion to dismiss this declaratory judgment action. *See Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 209 (4th Cir. 2006).

The Fourth Circuit has established four factors for district courts to consider in deciding whether to proceed with a federal declaratory judgment action when a parallel state action is pending:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*United Capitol Ins. Co. v. Kapiloff,* 155 F.3d 488, 493–94 (4th Cir. 1998) (quoting *Nautilus Ins.,* 15 F.3d at 377) (the "*Nautilus* factors").

Based on an analysis of the *Nautilus* factors, I find that dismissal is inappropriate.

The first factor does not weigh against the exercise of federal jurisdiction. Typically, a court's discretion to avoid state-law questions otherwise within its jurisdiction may be exercised only when the questions of state law are difficult, complex, or unsettled. *Id.* at 494. When presented with a federal claim that is simultaneously being adjudicated in state court, the district court "should ascertain whether the question in controversy between the parties to the federal suit, and

5

which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Brillhart*, 316 U.S. at 495. This may include consideration of whether "the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Id.*; *see Mitcheson v. Harris*, 955 F.2d 235 (4th Cir. 1992). If the "relevant state law is not problematic or difficult to apply," the state's interest in having the issues decided in state court is weakened. *Poston*, 88 F.3d at 258.

The state law questions present in this case are not unusually difficult or complex. Scottsdale's argument that the policies provide no coverage is based solely on the claims set forth in the underlying complaint and the terms of the insurance policies issued to Solwind. [ECF No. 12, at 6]. This declaratory action involves nothing more than the routine application of settled principles of insurance law to a particular set of disputed facts. *See Gross*, 468 F.3d at 211. "[W]hile the State certainly has a strong interest in protecting its jurisprudence and an interest in deciding cases calling for application of its own law, to defer to the state court tort case in the circumstances before us will not advance the State's interests significantly because (1) the contractual coverage issues will not be decided by the state tort case,[1] and (2) [Scottsdale] is not a party to the state case." *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d

---

[1] The court is aware of two pending motions in the underlying case which, if decided, may bring the coverage dispute to the forefront of the state action. However, as both of those motions remain pending, coverage issues are exclusive to this action. At this time, the claims of all interested parties cannot be satisfactorily adjudicated in the underlying proceeding as all necessary parties have not been joined to that action and the coverage issues have not been made part of the controversy at issue. *See Mitcheson*, 955 F.2d at 235.

6

409, 414 (4th Cir. 2004). Moreover, as the Fourth Circuit has observed, "the State's interest is 'not particularly significant' where any state law issues are standard and 'unlikely to break new ground.'" *Id.* (quoting *Kapiloff*, 155 F.3d at 494). West Virginia's interest in having its own courts decide this issue is no stronger than it is in any case where a federal court has jurisdiction over a claim in which state law provides the rule of decision. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Lambert*, No. 2:08-CV-01158, 2009 WL 10689047, at *2 (S.D. W. Va. Feb. 10, 2009) (citing *Gross*, 468 F.3d at 211). The first factor does not weigh in favor of abstention.

The second *Nautilus* factor—whether the state court could resolve the issues more efficiently—likewise does not weigh in favor of dismissal. The state court will be tasked with determining (a) whether the conduct of the defendant constitutes a trespass, and (b) whether the state-court plaintiff suffered any damages as a result thereof. [ECF No. 1-1]. These issues are separate and distinct from the controversy at issue here—whether the allegations in the state-court complaint are covered by the specific language of the insurance policies. The efficiency factor does not favor abstention when the federal action involves insurance coverage, and the state court action does not. *Gross*, 468 F.3d at 212. Nor does it matter that the state court has a just and speedy mechanism to determine insurance coverage issues should they arise—that some "issues raised here might be resolved in some yet-to-be-filed action brought in state court is not alone sufficient to justify dismissal of this action." *Id.* (citing *Nautilus, Ins.*, 15 F.3d at 379). Because the state court action involves liability,

7

not insurance coverage, I **FIND** no evidence that the state court could resolve the insurance issues more efficiently than this court.

The third factor addresses the likelihood of unnecessary entanglement between the federal and state court systems. *See Coffey*, 368 F.3d at 411. In resolving the third factor, I must determine whether "the coverage issue would result in entanglement, through gratuitous interference, with state court proceedings by preempting critical . . . findings that the state court will have to make in resolving" the state court action. *Id.* at 413. The duty to defend question in this case will not require the district court to resolve factual questions and instead requires only that this court compare what is alleged in the underlying complaint, with the language of the insurance policy. There is no duty to defend where "the insurer would not be liable under its contract for any judgment *based upon the allegations*" against its insured. *Ohio Sec. Ins. Co. v. KR Enters, Inc.*, No. 1:15-16264, 2017 U.S. Dist. LEXIS 42011, at *13–15 (S.D. W. Va. Mar. 23, 2017) (emphasis in original) (quoting *Coffey*, 368 F.3d at 413). The state court will address tort liability while this court will be analyzing insurance coverage. Thus, it is unlikely that the resolution of issues in one court will have any bearing on the specific issues before the other court. "This is not a case where many of the issues of law and fact sought to be adjudicated in the federal action are already being litigated by the same parties in the related state court action." *Gross*, 468 F.3d at 212.

Finally, on the last *Nautilus* factor, no party has advanced convincing evidence that Scottsdale is procedurally fencing or forum-shopping in prosecuting its federal

declaratory judgment action. This case presents a live and serious question of whether the underlying conduct triggers coverage under either of the policies issued to Solwind, and there is no information before the court which would lead it to find that Scottsdale "raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." *Id.*; *Nautilus Ins.*, 15 F.3d at 380. Rather, as was the case in *Gross*, it appears that "[t]his action was filed in an entirely proper effort to obtain prompt resolution of a dispute over a liability insurer's obligation to its insureds." 468 F.3d at 212.

Because none of the *Nautilus* factors favor dismissal of this declaratory judgment action, I **FIND** that declining to exercise jurisdiction would be inappropriate. Defendants Solwind and Geoex's Motions to Dismiss [ECF Nos. 11, 17] are **DENIED**.

I now turn to Scottsdale's Cross-Motion for Summary Judgment [ECF No. 12] and Solwind's Cross-Motion for Summary Judgment [ECF No. 13].

### III. Standard of Review

Under Federal Rule of Civil Procedure 56(a), the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A dispute is genuine 'if a reasonable jury could return a verdict for the nonmoving party'" and a "fact is material if 'it might affect the outcome of the suit under the governing law.'" *Jacobs v. N.C. Admin. Off. of the Cts*, 780 F.3d 562, 568–69 (4th Cir. 2015) (quoting *Libertarian Party of VA v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)). A motion for

summary judgment should be granted if the nonmoving party fails to make a showing sufficient to establish the existence of an essential element of his claim or defense upon which he bears the burden of proof. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. *Id.* Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

## IV.   Discussion

In its Cross-Motion, Scottsdale argues that the allegations contained in the underlying complaint [ECF No. 1-1] do not trigger coverage under either Coverage A or Coverage B of the policies. [ECF No. 12]. Scottsdale therefore contends that because coverage is not triggered, it has no duty to defend or indemnify Solwind in the underlying state action. *Id.* In its Cross-Motion, Defendant Solwind argues that the Geoex complaint states a claim for the tort of waste, triggering coverage under Coverage A. [ECF No. 13].

### A.   West Virginia Contract Interpretation Principles

Liability insurance policies impose two main duties on the part of the insurer: the duty to defend and the duty to indemnify. *Aetna Cas. & Sur. Co. v. Pitrolo*, 342 S.E.2d 156, 160 (W. Va. 1986); *Donnelly v. Transp. Ins. Co.*, 589 F.2d 761, 765 (4th Cir. 1978). As a general rule, an insurer's duty to defend is triggered when "the

10

allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." *See Pitrolo*, 342 S.E.2d at 160; *see also* Syl. Pt. 6, *Farmers & Mech. Mut. Ins. Co. of W. Va. v. Cook*, 557 S.E.2d 801 (W. Va. 2001). An insurer must defend its insured for all claims asserted against the insured, if any of the claims might trigger coverage. *Horace Mann Ins. Co. v. Leeber*, 376 S.E.2d 581, 584 (W. Va. 1988); *Tackett v. Am. Motorists Ins. Co.*, 584 S.E.2d 158, 162–63 (W. Va. 2003). However, the insurer need not provide a defense if the claims against the insured fall outside the scope of the policy and are "entirely foreign to the risk insured against." *Air Force Ass'n v. Phx Ins. Co.*, No. 89-2317, 1990 WL 12677, at *2 (4th Cir. 1990) (citing *Donnelly*, 589 F.2d at 765).

The language of an insurance policy determines whether it provides coverage for a particular claim. *KR Enters.*, 2017 U.S. Dist. LEXIS 42011, at *15. There is no duty to defend if it appears clearly that the insurer would not be liable under its contract for any judgment based on the allegations against the insured. *Id.* (citing *Brenner v. Laws. Title Ins. Corp.*, 397 S.E.2d 100, 102 (Va. 1990)). Although an insurer's duty to indemnify will depend on resolution of facts alleged in the complaint, no such fact finding is necessary if there is no duty to defend because the allegations, even when taken as proved, would fall outside the applicable policy's coverage. *KR Enters*, 2017 U.S. Dist. LEXIS 42011, at *15.

Language in an insurance policy should be given its plain, ordinary meaning. *See, e.g.*, Syl. Pt. 8, *Cherrington v. Erie Ins. Prop. & Cas. Co.*, 745 S.E.2d 508, 512 (W. Va. 2013); *Am. States Ins. Co. v. Tanner*, 563 S.E.2d 825, 829 (W. Va. 2002). In

11

fact, if the provisions of an insurance policy contract "are clear and unambiguous," they are not "subject to judicial construction or interpretation" at all. *Keffer v. Prudential Ins. Co. of Am.*, 172 S.E.2d 714, 715 (W.Va. 1970). Instead, "full effect will be given to the plain meaning intended." *Id.* Where the language under consideration is ambiguous, however, it should be "strictly construed against the insurance company and in favor of the insured." *Kanawha Valley Radiologists, Inc. v. One Valley Bank, N.A.*, 557 S.E.2d 277, 282 (W.Va. 2001).

### B. The Scottsdale Policies

#### i. Coverage A

Turning to the provisions of the policies, I first consider whether the Mont Stepp incident falls within the scope of Coverage A, which provides, in relevant part, as follows:

> 1. Insuring Agreement
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. . . .
>    b. This insurance applies to "bodily injury" and "property damage" only if:
>       (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> . . . .
>
> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> "Property Damage" means:
>    a. Physical injury to tangible property, including all resulting loss of use of that property . . . or
>    b. Loss of use of tangible property that is not physically injured.

[ECF No. 1-2, at 20, 34]. In Count I of its complaint, Scottdale argues that Coverage A does not apply to the Mont Stepp incident because the underlying complaint does not allege "property damage" necessary to trigger an "occurrence" under the policies. [ECF No. 1]. Because Geoex's purported damage features physical injury to intangible property, Scottsdale contends that the Mont Stepp incident falls outside the scope of "property damage," as defined by the policies. *Id.* at 9.

The policies do not further define "tangible property," and so I use the term's plain meaning: "capable of being touched, able to be perceived as materially existent esp. by the sense of touch, palpable, tactile." Webster's Third New International Dictionary 11 (Merriam–Webster, Inc. 1995). The Fourth Circuit has likewise equated the terms "tangible" and "physical" to defeat any ambiguity. *Am. Online, Inc. v. St. Paul Mercury Ins. Co.*, 347 F.3d 89, 94–95 (4th Cir. 2003).

Taking the facts of the underlying complaint as true, Solwind's interference with the Mont Stepp properties does not implicate tangible property. Neither an easement, right of way, nor leasehold qualify as tangible property. *See Missouri ex rel. Sw. Bell Tel. Co. v. Pub. Serv. Comm'n*, 262 U.S. 276, 294 (1923) (equating leases, easements, and other privileges with intangible property); *Greene Line Terminal Co. v. Martin*, 10 S.E.2d 901, 903 (W. Va. 1940) (defining a leasehold as "incorporeal and intangible in its nature"). Any damages resulting from the Mont Stepp incident are the result of Solwind's interference with Geoex's *intangible property rights*, and do not constitute "property damage" as defined in the policies.

Defendant Solwind, in its Cross-Motion, argues that the Geoex complaint

13

states a claim for waste, triggering coverage under Coverage A. [ECF No. 13, at 9-10]. That argument is unpersuasive. Waste is a property damage tort consisting of an injury to a freehold by one rightfully in possession of land. *Cecil v. Clark*, 39 S.E. 202, 206 (W. Va. 1901). Nowhere in the underlying complaint is Solwind's interest in the property explained. *See* [ECF No. 1-1]. Nor does the complaint establish that the purported waste was committed by one "rightfully in possession of land." *Cecil*, 39 S.E. at 206. The underlying complaint likewise fails to demonstrate how any action by Solwind resulted in a "permanent or lasting injury" to the property, "done or permitted to be done by [the] holder of [a] particular estate." *Keesecker v. Bird*, 490 S.E.2d 754, 769 (W. Va. 1997). Moreover, the Geoex complaint features the word "waste" only once [ECF No. 1-1, at 3], and does not establish even the most basic elements of the tort. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (explaining that a plaintiff's obligation is to provide the "grounds of his entitlement to relief," which requires "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."). The underlying complaint does not state claim for waste and fails to allege any "property damage" necessary to trigger Coverage A.

Because the Mont Stepp incident did not result in "property damage" as defined by the policies, I **FIND** that Coverage A does not insure Solwind against Geoex's claims. Accordingly, Scottsdale has no duty to provide defense or indemnification for Geoex's claims under the provisions of Coverage A.[2]

---

[2] The court need not address whether Coverage A is triggered by "bodily injury," as none has been pled in the underlying complaint. *See* [ECF No. 1-1].

## ii. Coverage B

I next consider whether the Mont Stepp incident triggers coverage under Coverage B, which provides, in relevant part, as follows: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." [ECF No. 1-2, at 25]. In Count I of its complaint, Scottsdale contends that Coverage B does not apply to the Mont Stepp incident because Geoex's purported injuries do not qualify as a "personal and advertising injury." The policies define "personal and advertising injury" as:

> Injury, including consequential "bodily injury," arising from one or more of the following offenses:
> a. False arrest, detention or imprisonment;
> b. Malicious prosecution;
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
> f. The use of another's advertising idea in your "advertisement"; or
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

[ECF No. 1-2, at 34]. Only Provision C, which defines a "personal or advertising injury" as "the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises[3] that a person occupies, committed

---

[3] Moreover, this court is not convinced that the Geoex complaint [ECF No. 1-1] alleges "the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or

15

by or on behalf of its owner, landlord or lessor," is applicable to this analysis. *Id.*

Seeing no material ambiguities, I too give this language its plain meaning. Importantly, the offense allegedly committed by Solwind against Geoex (trespass) is not included in this provision. For a "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises" to constitute a "personal and advertising injury" under Coverage B, it must be "committed by or on behalf of its owner, landlord or lessor." *Id.* at 34. The Geoex complaint [ECF No. 1-1] contains no facts suggesting that Solwind was the owner, landlord, or lessor of the Mont Stepp properties. Rather, the underlying complaint indicates that the Mont Stepp heirs, not Solwind, own the properties at issue. *Id.* at 1. Nor does the complaint indicate that Solwind was acting at the request of the property owner, landlord, or lessor when erecting certain structures and pipelines on the property. Solwind has failed to address this issue in its briefing, despite Scottsdale's contention that Coverage B cannot apply as Solwind is "not the owner of the property that is the subject of the Geoex Complaint." [ECF No. 12, at 9]. While I disagree with Scottsdale's limited reading of Provision C—which explicitly triggers coverage when an entity acts *on behalf of* an owner, landlord, or lessor—I cannot

---

premises" given the plain meaning of the word "premises." [ECF No. 1-2, at 34]. Because the policies do not define "premises," I adopt its plain meaning: "a tract of land with buildings thereon; a house or building, along with its grounds." Webster's Third New International Dictionary 11 (Merriam–Webster, Inc. 1995). From the limited information available in the Geoex complaint, it is clear that the Mont Stepp incident did not involve interference with a "room" or "dwelling," but much less clear is whether the incident involved a "premises"—a tract of land with buildings thereon or a house or its buildings along with its grounds—that "a person occupies." *See* [ECF No. 1-1]. Because the underlying complaint fails to describe the properties at issue—or state whether those properties are occupied by a person—it is unlikely that the Mont Stepp incident constitutes an interference with a "premises." Regardless, the Mont Stepp incident does not trigger coverage under Coverage B for the other reasons outlined herein.

16

determine that coverage is triggered where the complaint fails to indicate, and Solwind has failed to clarify, the connection between Solwind and the property at issue. Because there is nothing in the underlying complaint to suggest that Solwind was either (1) the owner, landlord, or lessor of the property at issue; or (2) acting on behalf of the owner, landlord, or lessor when the alleged conduct took place, Geoex's purported injuries do not constitute a "personal or advertising injury."[4]

Because Geoex's alleged injuries did not arise from one or more of the policies' listed offenses, Geoex's claims do not qualify as a "personal and advertising injury" under Coverage B. Therefore, I **FIND** that Coverage B does not insure Solwind against Geoex's claims, and Scottsdale has no duty to provide defense or indemnification in the underlying action.

## V. Conclusion

Under the plain language of Coverage A and Coverage B of the policies, the Mont Stepp incident is not covered. Coverage A is inapplicable because the Mont Stepp incident did not result in "property damage" or "bodily injury" necessary to

---

[4] Scottsdale likewise contends that Provision C ("wrongful entry, wrongful eviction from, or the invasion of the right of private occupancy") requires interference with a possessory interest and is thus inapplicable here as the Mont Stepp incident interfered with Geoex's easement, a non-possessory interest. [ECF No. 12, at 8]. While I agree that an easement is a non-possessory interest and interference with it would not trigger Provision C, such argument ignores Geoex's other rights to the Mont Stepp properties—a right of way and leasehold. Geoex is the "Lessee of certain active oil and gas leases together with a right of way and pipeline easement in Mingo County, West Virginia." [ECF No. 1-1, ¶ 1]. A leasehold, though intangible and inapplicable to Coverage A, is most certainly a possessory interest in land or premises. *See, e.g.*, *United States v. Lot No. 36 of Windsor Park N. Subdivision*, No. 1:07CV944, 2009 WL 1795264, at *2 (M.D.N.C. June 22, 2009); *Greene Line Terminal Co. v. Martin*, 10 S.E.2d 901, 903 (1940); Restatement (First) of Property §§ 7, 9 (Am. Law Inst. 1936) (defining a leasehold as "a tenant's possessory estate in land or premises"). While Geoex does maintain a possessory interest in the Mont Stepp properties, the complaint's failure to clarify whether Solwind was acting on behalf of its owner, landlord, or lessor when the underlying conduct took place, renders Provision C, and thus, Coverage B, inapplicable.

trigger an "occurrence." Coverage B likewise does not cover the incident because Geoex's alleged damages do not fall within the definition of a "personal and advertising injury." Accordingly, the court **GRANTS** Plaintiff Scottsdale Insurance Company's Cross-Motion for Summary Judgment [ECF Nos. 12, 26] and Defendant Solwind's Cross-Motion for Summary Judgment [ECF No. 13] is **DENIED**. Defendants Solwind and Geoex's Motions to Dismiss [ECF Nos. 11, 17] are also **DENIED.**

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 14, 2023

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

18